I agree that the trial court acted within its discretion by denying the Ohio Associated Builders and Contractors' motion to intervene; therefore, I concur with the majority opinion on this issue.
However, I would construe R.C. Chapter 4116 differently than the majority. In my view, R.C. 4116.02(A) effectively prohibits public authorities including state and local governmental entities and any institution supported in whole or in part by public funds from entering into project labor agreements (PLA's). Consequently, its constitutionality is not a moot point as the majority suggests. I would reach the constitutional issue on the merits and would hold that R.C.4116.02(A) regulates an area which the National Labor Relations Act (NLRA) intended to leave to the free play of economic forces and therefore violates the Supremacy Clause of the United States Constitution. Accordingly, I dissent from the majority opinion with respect to the constitutionality of R.C. Chapter 4116.
 I. R.C. Chapter 4116 Prohibits Project Labor Agreements
The testimony at the preliminary injunction hearing showed that PLA's are three-way agreements among the project owner, contractors and organized labor. In the context of a public sector project such as the juvenile detention center, as a practical matter, the contractor and/or subcontractors cannot be involved in the initial PLA negotiations because no contracts have been awarded yet. Consequently, the agreement is first negotiated between the public authority and labor organizations representing all of the trades which will work on the project.
If PLA's were only an arrangement between the public authority and labor representatives, they would not even be affected by R.C. Chapter 4116; that statute only limits the contractual relationships between public authorities and contractors. Nor would the NLRA be implicated. The NLRA is concerned with the relationship among employers and labor organizations, not the relationship among project owners and labor organizations.
However, a PLA does not stop with an agreement among the project owner and labor representatives. The purpose of a PLA is to obtain consistent terms for all the labor involved on a project. The project owner does not directly employ the various tradesmen and laborers involved; the contractors and subcontractors do. Thus, for the PLA to be effective, it must require the public authority to ensure that any contractor it retains will comply with the terms to which the public authority and the labor organizations have agreed.
This is clearly a requirement that a contractor or sub-contractor enter into agreements with any labor organization on the public improvement, a prohibited term of a public improvement contract under R.C. 4116.02(A). The contractor or subcontractor must accede to the terms of employment agreed upon by the public authority and the labor organization, so it is a party to an agreement with a labor organization.
It is essential to the purpose of a PLA that the contractors and the labor organizations agree to comply with the same terms. A PLA is intended to avoid conflicting work rules and to prevent work stoppages and inefficiencies due to the differing terms of collective bargaining agreements independently negotiated between the various unions and their various employers, and the still different terms upon which non-union contractors have engaged their own employees. The only way this can work is if all contractors and unions agree to the same terms.
Because R.C. 4116.02(A) prohibits a public authority from requiring a contractor or subcontractor to enter into an agreement with a labor organization, and that kind of requirement is an essential part of a PLA, R.C. 4116.02(A) effectively prohibits PLA's.
 II. R.C. 4116.02(A) Is Preempted by the NLRA A. Generally
The NLRA contains no express preemption provision; therefore, it is presumed that Congress did not intend for the NLRA to displace state law, and courts must be reluctant to infer preemption. Building Construction Trades Council v. Associated Builders and Contractors (1993), 507 U.S. 218,224. Nevertheless, the United States Supreme Court has articulated two distinct NLRA preemption principles: First, to prevent conflict between state regulations and the NLRA, Garmon preemption prohibits state regulation of activities that, arguably, the NLRA affirmatively protects under section 7 or prohibits as an unfair labor practice under section 8. San Diego Building Trades Council v. Garmon (1959), 359 U.S. 236. Second, Machinists preemption proscribes state regulation of matters which Congress intended to be unregulated and left to the free play of economic forces. Machinists v. Wisconsin Employment Relations Comm'n. (1976), 427 U.S. 132.
 B. Pre-Hire Collective Bargaining Agreements Under The NLRA
There is no provision in the NLRA, correlative to sections 8(a)(3) and 14(b)[1], which expressly allows or disallows contractual obligations on contractors to enter into agreements with labor organizations or expressly allows or disallows state regulations of such provisions. Therefore, the question before us is whether Congress intended to leave this area to the free play of economic forces and prohibit any state regulation.
Section 8(e) of the NLRA, 29 U.S.C. § 158(e), provides in pertinent part:
 (e) Enforceability of contract or agreement to boycott any other employer; exception. It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforceable and void; Provided, That nothing in this subsection (e) shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction * * *.
 The proviso specifically allows construction industry pre-hire collective bargaining agreements which, among other things, require the employer to use only union contractors, subcontractors and suppliers. As the United States Supreme Court recognized in Building and Construction Trades Council v. Associated Builders and Contractors (1993), 507 U.S. 218, 231, [i]t is evident from the face of the statute that in enacting exemptions authorizing certain kinds of project labor agreements in the construction industry, Congress intended to accommodate conditions specific to that industry. Such conditions include, among others, the short-term nature of employment which makes posthire collective bargaining difficult, the contractor's need for predictable costs and a steady supply of skilled labor, and a long-standing custom of prehire collective bargaining in the industry.
In Building and Construction Trades Council, the Supreme Court held that when the state is acting as the purchaser of contractors' services, it may choose a contractor based upon the contractor's willingness to enter into a prehire collective bargaining agreement. Therefore, the court held, the state could include bid specifications in its solicitation for bids which required each successful bidder and any and all levels of subcontractors, as a condition of being awarded a contract or subcontract, * * * will be bound by the provisions of a project labor agreement which the state agency had negotiated with the Building and Construction Trades Council.
Implicit in its holding that the state may enter into such a contract in its capacity as a purchaser of construction services, is the Supreme Court's recognition that the NLRA intended to leave such matters to the free play of economic forces, in which the state was a participant in that case. The Court specifically noted that
 [i]ndeed, there is some force to petitioners' argument * * * that denying an option to public owner-developers that is available to private owner-developers itself places a restriction on Congress' intended free play of economic forces.
507 U.S. at 232.
The critical distinction between this case and the Building and Construction Trades Council is that, in this case, the state is not acting as a purchaser of construction services but as a regulator. This case does not involve a single contract but a statute generally governing all construction contracts for public improvements. Furthermore, the statute regulates not only the state itself as a purchaser but almost every governmental entity in the state[2] and, more tellingly, any institution supported in whole or in part by public funds. R.C.4116.01(A) (defining public authority). The variety of entities whose purchasing decisions are circumscribed by this law exceeds the bounds of the state making decisions in its own behalf and enters the realm of regulation.
It might be possible to defend the state as a market participant if the application of the statute were limited to projects involving state funds; however, R.C. Chapter 4116 is not so limited. It applies to bid specifications * * * for the proposed public improvement and any subsequent contract or other agreement for the public improvement to which the public authority and a contractor or subcontractor are direct parties. Public improvements are defined broadly to include:
 * * * all buildings, roads, streets, alleys, sewers, ditches, sewage disposal plants, water works, and other structures or works constructed by a public authority or by any person who, pursuant to a contract with a public authority, constructs any structure or work for a public authority.
R.C. 4116.01(C). There is no statutory restriction which might limit the statute's application to projects involving state funds.
For these reasons, I would hold that Congress intended in the NLRA to relegate prehire collective bargaining agreements to the free play of economic forces and that the state's regulation in this case is therefore preempted to the extent it prohibits any public authority from requiring a contractor to enter into an agreement with a labor organization. Consequently, I would hold that R.C. 4116.02(A) is preempted by the NLRA and violates the Supremacy Clause of the United States Constitution.
[1] As the majority correctly notes, section 14(b) of the NLRA,29 U.S.C. § 164(b), expressly allows states to forbid contracts requiring employees to become members of a labor organization as a condition of employment, despite the provisions of section 8(a)(3),29 U.S.C. § 158(a)(3), which states that, under certain circumstances, such contracts are not forbidden by the NLRA. For this reason, I assume that R.C. 4116.02(B) is not preempted by the NLRA. Cf. Oil, Chemical Atomic Workers Int'l Union v. Mobil Oil Corp. (1976),426 U.S. 407; Local Union Nos. 141, 229, 681, and 706 v. NLRB (1982),675 F.2d 1257. This opinion is limited to the constitutionality of R.C.4116.02(A).
[2] The one exception is a charter municipality constructing a public improvement for which state funds have not been appropriated. See R.C.4116.01(A).